LOBRANO, J.,
DISSENTS AND ASSIGNS REASONS.
hi respectfully dissent from the majority opinion. Regarding the statements made by the DOI defendants, I find that they *249 are capable of a defamatory meaning. Further, I find that the circumstances surrounding these statements occasion a qualified privilege, as these statements report on a matter of public concern (“public concern qualified privilege”). Regarding the statements made by the Scheur defendants, I find that these statements are also capable of a defamatory meaning. Moreover, I find that the circumstances surrounding these statements occasion a qualified privilege because the record indicates that they may have been material to the speaker’s interests during litigation (“litigation interest qualified privilege”). Because all of the statements at issue are capable of a defamatory meaning, subject to a qualified privilege, and there exists genuine a issue of material fact as the record fails to establish conclusively that the DOI defendants and Scheur defendants did not abuse their qualified privileges, I would reverse the district court’s judgment granting the defendants’ motions for summary judgment and remand the case for a full trial on the merits.
The majority finds that the statements made by the DOI defendants and the Scheur defendants are statements of opinion rather than statements of fact. As the majority recognizes, it is possible for a statement of opinion to have a defamatory meaning when that opinion statement implies the existence of false and defamatory facts. Fitzgerald v. Tucker, 98-2313 (La. 6/29/99), 737 So.2d 706, 717 (citations omitted). However, the majority does not address whether the statements at issue imply defamatory facts, finding instead that “[t]he statements made by Mr. Scheur were opinions made in the context of his defense of the lawsuit Mr. Jacobs had filed against him” and “[sjimilarly, the statements made by the DOI defendants are merely expressions of opinion.” Thus, the majority concludes, the statements are incapable of a defamatory meaning. I disagree. I find that the statements at issue are capable of implying, to a reasonable listener in the context delivered, defamatory facts—that Jacobs filed a lawsuit without proper legal basis; propagated lies within that lawsuit, and did so as a result of being a “disgruntled employee.”
The majority improperly concludes that “these statements would be clearly understood by an ordinary person as expressing the opinions of Mr. Scheur.” I find the opposite to be true and disagree with the majority’s view as to how a reasonable person understands statements made with respect to a pending judicial proceeding. The fact that these statements were made during litigation does not diminish their capacity to have a defamatory meaning. See Johnson v. Camanga, 2002-1198, p. 10 (La. App. 5 Cir. 4/29/03), 845 So.2d 1140, 1147 (finding that a party defamed in legal pleadings may recover damages for defamation). In fact, I opine that such statements increase their capacity to have a defamatory meaning as a reasonable person would view statements made during litigation—wherein parties can be sanctioned for propagating falsehoods and taking action for the sole purpose of harassment—as more likely to be truthful and factual. A reasonable person would conclude that the statements by the defendants were not wholly dependent on the defendants’ subjective viewpoint but were made for the purpose of explicitly contradicting the factual. allegations in the lawsuit. To hold otherwise | ¿would implicitly acknowledge that the public no longer believes in the solemn obligation of litigants to use the courts to seek justice and truth.
However, all of the statements at issue are subject to some type of qualified privilege. Qualified privilege “balances the freedom of expression against the right to defend against defamation.” Wood v. Del Giorno, 2006-1612, p. 8 (La. App. 4 Cir. *250 12/19/07), 974 So.2d 95, 100. Determining whether a conditional or qualified privilege exists requires a two-step analysis. First, courts determine .whether the circumstances surrounding a communication occasion a conditional or qualified privilege. Smith v. Our Lady of the Lake Hospital Inc., 93-2512, p. 18 (La. 7/5/94), 639 So.2d 730, 735. If so, it must be decided whether the privilege was abused. Id, Abuse of a conditional or qualified privilege is measured by “knowledge of falsity or reckless disregard for truth.” Hornot v. Cardenas, 2006-1341, p. 2 (La. App. 4 Cir. 10/3/07), 968 So.2d 789, 803. “While the first step is generally determined by the court as a matter of law, the second step of determining abuse of a conditional privilege or malice is generally a fact question for the jury unless only one conclusion can be drawn from the evidence.” Kennedy v. Sheriff of E. Baton Rouge, 2005-1418, p. 18 (La. 7/10/06), 935 So.2d 669, 682 (citations omitted).
The Louisiana Supreme Court recognizes that spéech on matters of public concern receives enhanced constitutional protection, Romero v. Thomson Newspapers (Wisconsin), Inc., 94-1105, p. 6 (La.1/17/95), 648 So.2d 866, 869. Accordingly, Louisiana courts recognize a public concern qualified privilege when the speaker of defamatory material is reporting on a matter of public concern. See Trentecosta v. Beck, 96-2388, p. 19 (La. 10/21/97), 703 So.2d 552, 563. This privilege allows for “fair comment on public affairs.” Id. The United States Supreme Court defines matters of “public concern” as speech “relating to any matter of political, social, or other concern to the community.” Connick v. Myers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). The statements Lmade by the DOI defendants, were reports on actions taken by a government agency, DOI. Because the acts of a government agency are necessarily of concern to the community, these statements address a matter of public concern, and are subject to public concern qualified privilege. Trentecosta, 96-2388 at p. 19, 703 So.2d at 563 (stating that qualified privilege has been extended to include “a reporting of governmental proceedings and activities”).[1]
Louisiana courts also recognize a litigation interest qualified privilege that protects parties from defamation liability for statements made ( during' litigation. See, e.g., Lemke v. Keiser & Auzenne, L.L.C., 2005-893, p. 4 (La. App. 3 Cir. 2/1/06), 922 So.2d 690, 692 (citations omitted). “[Wlhether the ’qualified privilege rule will apply to an individual’s statements made during litigation hinges on whether the alleged defamatory statements are material to the ongoing litigation....” Id.; see also Sullivan v. Malta Park, 2014-0823, p. 15 (La. App. 4 Cir. 12/10/14), 156 So.3d 1200, 1209 (finding that, an attorney’s defamatory statements that were not material to the ongoing litigation were not protected by litigation interest qualified privilege). Considering the summary judgment record before us, which indicates that Scheur was directly confronted by the press regarding allegations in a pending lawsuit against him, and Scheur has an -interest in defending himself during pending litigation, the Scheur defendants’ statements potentially fall under the litigation interest qualified privilege.[2] This is true despite | ¿the fact *251 that the Scheur defendants did not make their statements during a formal judicial proceeding. See Hakim v. O’Donnell, 49,-140, p. 12 (La. App. 2 Cir. 6/25/14), 144 So.3d 1179, 1187-88 (stating that there “are a variety of situations in which the interest that an individual is seeking to vindicate or to further is regarded as sufficiently important to justify some latitude for making mistakes so that the publication of defamatory statements is deemed to be conditionally or qualifiedly privileged”) (citations omitted).[3]
The district court’s judgment granting the motions for summary judgment filed by the DOI defendants and the Scheur defendants is in error because thé record before this Court does not clearly establish that the DOI defendants and Scheur defendants did not abuse their respective qualified privileges. Determining whether a qualified privilege was abused requires an analysis of whether the privileged party acted with malice or with a lack of good faith. Nolan v. Jefferson Par. Hosp. Serv. Dist. No. 2, 2011-291, p. 6 (La. App. 5 Cir. 3/13/12), 90 So.3d 1178, 1182, “To establish reckless disregard of the truth, a plaintiff must prove that the publication was deliberately falsified, published despite the defendant’s awareness of probable falsity, or the defendant in fact entertained serious doubts as to the truth of his publication.” Jalou II, Inc. v. Liner, 2010-0048, p. 22 (La. App. 1 Cir. 6/16/10), 43 So.3d 1023, 1037. Even if one construes the statements only as opinions, it must be determined whether the statements were made with actual malice. See Fitzgerald, 98-2313, 737 So.2d at 717 (finding that pure statements of opinion can be the basis of defamation claims where they imply defamatory facts and .are. made, with actual malice).[4] As stated supra, this second step in the privilege analysis is a fact question left to the trier of fact unless only one conclusion , can be drawn from the: evidence, Id.
' The evidence before this Court fails to establish conclusively that the DOI. defendants and Scheur defendants acted in good faith and without malice, and there exists genuine issues, of material fact as to this *252 issue. The facts that Scheur was convicted of crimes regarding his management of the Oath and that the Oath, which was overseen by DOI, was ultimately liquidated call into question what the speakers of the statements knew at the time they made their statements, and whether they made those statements out of malice towards Jacobs.
Moreover, the majority’s decision to avoid addressing abuse of privilege by determining instead that these statements are not capable of a defamatory meaning, allows litigants carte blanche to defame opposing litigants with absolute protection from defamation liability.[5] This narrow interpretation of what statements are “capable of a defamatory meaning,” effectively expands the amount of communications excepted from defamation liability without the balance afforded by an abuse of privilege analysis. This is uniquely harmful when one considers the | ¿effects of social media, which allows publishers to disseminate false stories to mass audiences instantaneously.[6]
Because the circumstances surrounding the statements at issue occasion a qualified privilege and more than one conclusion can be drawn from the evidence regarding abuse of the privilege, summary judgment is not the appropriate remedy for Jacobs’s claims. See Kennedy, 2005-1418, p. 18, 935 So.2d at 682. Accordingly, I would reverse the district court’s judgment granting summary judgment in favor of the DOI defendants and the Scheur defendants and remand the case for a full trial on the merits.

. See also Stephen J. Mattingly, Drawing A Dangerous Line: Why the Public-Concern Test in the Constitutional Law of Defamation Is Harmful to the First Amendment, and What Courts Should Do About It, 47 U. Louisville L. Rev. 739, 739 (2009) (arguing that the public concern standard should be applied broadly due to the inherent dangers in government itself deciding what speech is relevant to the public's concerns).

. In analyzing whether statements are material to the litigation, Louisiana courts consider *251 relevance and whether there is a "reasonable basis” for the statements in question. See, e.g., Freeman v. Cooper, 414 So.2d 355, 359 (La. 1982); Miskell v. Ciervo, 557 So.2d 274, 275 (La.App. 4th Cir.1990); Sullivan, 2014-0823 at p. 15; 156 So.3d at 1209 (finding that qualified privilege applies for statements made during litigation when the statements are made without malice, with "probable cause,” and are material to the litigation). The “reasonable basis” analysis -asks whether the speaker had- reason to .believe the allegedly defamatory statement. See Miskell, 557 So.2d at 275 (stating that litigation privilege does not allow “free rein to make outlandish and unwarranted statements). The reasonable basis requirement makes defamation cases like this one, where issues of knowledge and motivation remain outstanding, uniquely difficult to resolve on summary judgment. Moreover, if the trier of fact determines that the statements were a personal attack on a litigant and were not for the purpose of securing a proper litigation advantage, then such a finding of fact could result in the conclusion that the .statements were not material to the litigation.

. See also Louis Edward Layrisson, III, Kennedy v. Sheriff of East Baton Rouge: A Hollow Victory for Louisiana Defamation Plaintiffs?, 68 La. L. Rev. 299, 305 (2007) (stating, “[qjualified privileges are not restricted to specific circumstances, but depend upon whether there is a justification to prótect the interests of the communicator or the public”) (citations omitted).

. Some of the statements, such as "[tjhe allegations have been withdrawn by the party filing them” cannot reasonably be construed as statements of opinion. See Mashburn v. Collin, 355 So.2d 879, 885 (La. 1977) (finding that the difference between a statement of fact and a statement of opinion depends oh whether an ordinary listener would understand the statement as conveying an existing fact or expressing the speaker’s opinion).

. Not all states require truth or even a reasonable basis for believing statements in order for litigation privilege to apply, at least to attorneys. See Church Mut. Ins. Co. v. All. Adjustment Grp., 102 F.Supp.3d 719, 731 (E.D. Pa. 2015) (finding that attorneys who made allegedly false and fraudulent statements in litigation were absolutely immune from defamation liability under Pennsylvania’s absolute litigation privilege). However, Louisiana does not provide an absolute privilege for litigants as it does for judges. See La. R.S. 14:50.

. See David O. Klein & Joshua R. Wueller, Fake News: A Legal Perspective, 20 No. 10 J. Internet L. 1, 10 (2017).