960 So.2d 67 (2007)
Dr. Judith FISHBEIN, M.D., et al.
v.
STATE of Louisiana through LSU HEALTH SCIENCES CENTER, et al.
No. 2006 CA 0549.
Court of Appeal of Louisiana, First Circuit.
March 9, 2007.
Writ Denied June 22, 2007.
*68 John Dale Powers, Douglas M. Chapoton, Baton Rouge, Counsel for Plaintiff/Appellant Judith Fishbein, M.D.
*69 W. Shelby McKenzie, Harry J. Philips, Jr., Matthew L. Mullins, Baton Rouge, Counsel for Defendant/Appellant Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.
John L. Stone, III, Baton Rouge, Counsel for Defendant/Appellant Teachers' Retirement System of Louisiana.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
The Board of Supervisors of Louisiana State University and Agricultural and Mechanical College (LSU) and the Teachers' Retirement System of Louisiana (TRSL) appeal a judgment of mandatory injunction in favor of the plaintiff-appellee, Judith Fishbein, M.D. For the following reasons, we affirm the trial court's judgment, but remand this matter to the trial court for a final evidentiary hearing and supplementation of its judgment.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The facts underlying Dr. Fishbein's cause of action and its procedural history are thoroughly set forth in this court's prior opinion in this matter, Fishbein v. State ex. rel. La. State Univ. Health Sciences Ctr., 03-0765, pp. 2-6 (La.App. 1st Cir.9/8/04), 887 So.2d 56, 59-61, writ granted, 04-2482 (La.12/17/04), 888 So.2d 850, and the supreme court's subsequent opinion, Fishbein v. State ex. rel. La. State Univ. Health Sciences Ctr., 04-2482, pp. 1-6 (La.4/12/05), 898 So.2d 1260, 1262-65.
To briefly recapitulate the pertinent facts, Dr. Fishbein, a pediatrician, was employed as an instructor in her field at the Louisiana State University Health Sciences Center from 1970 until she retired in 2001. She became a member of TRSL in 1979, and in 1980 she began receiving a "supplemental salary" in addition to her base salary. However, her employer, LSU, never withheld employee retirement contributions from her supplemental salary and never made employer retirement contributions based upon the supplemental salary. She filed suit on August 7, 2000, seeking a declaratory judgment that her supplemental salary formed part of her "earnable compensation" for retirement purposes and a mandatory injunction that LSU authorize the correction and proper funding of her retirement account.
The supreme court affirmed this court's ruling that Dr. Fishbein's supplemental salary constituted "earnable compensation" within the meaning of La. R.S. 11:701(10) and was thus subject to employee retirement withholding and employer retirement contributions.[1] However, the supreme court held that Dr. Fishbein's claims for recovery of additional retirement contributions that LSU should have paid prior to August 7, 1997 (over three years prior to suit) were prescribed.[2] Thus, since Dr. Fishbein entered the Deferred Retirement Option Plan (DROP) program on July 1, 1998, she was entitled to correction of only her "earnings or salary" which accrued between August 7, 1997 and July 1, 1998, in the form of a "purchase of service credit," pursuant to La. R.S. 11:888(C)(2).[3]
The supreme court remanded the case to the trial court with the instruction to appoint an actuary to determine the *70 amount of the purchase of service credit payable under La. R.S. 11:158. The trial court was also instructed to hold an evidentiary hearing to determine the respective amounts payable by both LSU and Dr. Fishbein to TRSL under La. R.S. 11:888(C)(2), and to consider Dr. Fishbein's remaining claim for injunctive relief.[4]
The trial court's hearing on remand was held on October 21, 2005. The parties had previously agreed to the appointment of Charles G. Hall as actuary, and Mr. Hall was the only witness called to testify. He had previously prepared two alternate actuarial reports, dated August 11, 2005 and September 21, 2005, which were also introduced into evidence. At the conclusion of the hearing, the trial court ruled in favor of Dr. Fishbein's position, as set forth in the second report. The trial court's judgment, ordering payment to TRSL in the respective amounts described in the September 21, 2005 report, was signed on December 15, 2005.
LSU now appeals. As an interested party whose rights are affected by the judgment at issue, TRSL also appeals the judgment under the authority of La. C.C.P. art.2086.

ASSIGNMENTS OF ERROR
LSU contends the trial court's judgment is grounded in the following errors:
1. The trial court erred when it failed to calculate the amount due [TRSL] by [LSU] in compliance with La. R.S. 11:701(5) by allowing appellee's compensation to increase by more than ten percent over the preceding twelve[-]month period, as urged by both LSU and TRSL.
2. The trial court erred by requiring [LSU] to pay more than fifty percent of the amount due [TRSL] when it failed to calculate the amount due by [LSU] in compliance with La. R.S. 11:888.
3. The trial court erred in excluding portions of the testimony of Charles G. Hall [that] would have explained his calculations of the actuarial amounts due [from LSU] and Dr. Fishbein under La. R.S. 11:701 and 11:888.
TRSL joins LSU in urging the first assignment of error above, and additionally assigns the following errors by the trial court:
[4.] The trial court erred in adopting the calculations contained in Charles Hall's letter of September 21, 2005, rather than those contained in Mr. Hall's letter of August 11, 2005.
[5.] The trial court erred in failing to include in its [j]udgment additional sums due TRSL since the dates specified in the letters of Charles Hall.

ANALYSIS
The pertinent provisions of La. R.S. 11:701(5) at the heart of the present controversy provide as follows:
(5)(a) "Average compensation" subject to the other provisions of this Paragraph, means the average earnable compensation of a teacher for the three highest successive years of employment, or the highest three successive joined years of employment where interruption of service occurred. The computation of such average compensation shall be in accordance with the following guidelines:

(i) The amount for the first through the twelfth month shall not exceed the compensation for the immediately preceding twelve months by more than ten percent.

*71 (ii) The amount for the thirteenth through the twenty-fourth month shall not exceed the lesser of the maximum allowable compensation amount or the actual compensation amount for the first through twelfth month by more than ten percent.
(iii) The amount for the twenty-fifth through the thirty-sixth month shall not exceed the lesser of the maximum allowable compensation amount or the actual compensation amount for the thirteenth through twenty-fourth month by more than ten percent.

(b) The thirty-six months used for average compensation cannot cover a period when the member receives more than three years of service credit.
(c)(i) The limitations on the computation of average compensation in this Paragraph shall not apply to any of the twelve-month periods where compensation increased by more than ten percent over the previous twelve-month period solely because of an increase in compensation by legislative act, by city/parish systemwide salary increase, or by a systemwide increase at a college or university.
(Emphasis supplied.)
The parties concede that Dr. Fishbein's three highest successive years of employment were her last three years of employment prior to the date she entered the DROP program.
Louisiana Revised Statutes 11:888 provides, in pertinent part:
A. Each employer shall transmit, monthly, a contributions report setting forth necessary salary and deduction information, provided that the board of trustees may, in its discretion, extend the time for submission.
. . . .
C.(1) If any reporting agency submits a contributions report which is in error as to the earnings or salary of a member or the amount of time worked by a member and such error results in the member receiving less service credit or paying less employee contributions, said error may be corrected by the reporting agency for a period of up to three years after the contributions report was due the retirement system by the payment of the correct employee and employer contributions plus legal interest compounded annually from the date of error.
(2) Any corrections as to earnings or salary made more than three years after a contributions report is due the retirement system shall be a purchase of service credit under the provisions of R.S. 11:158. The employer institution, in its discretion, may pay not more than fifty percent of the purchase price. However, if it makes such payment, it shall then make such payment, in the same percentage, with respect to all other purchases under this Paragraph, provided, however, that if the error is the total fault of the employer, the employer shall pay the total purchase cost. (Emphasis supplied.)
We initially address Dr. Fishbein's contention that the issues of application of La. R.S. 11:701(5) and La. R.S. 11:888 constitute affirmative defenses which were not previously pleaded by LSU nor raised prior to either the remand hearing or this appeal.
Whether an issue is an affirmative defense is a question of fact, determined by the circumstances of the individual case. Bienvenu v. Allstate Ins. Co., 01-2248, p. 5 (La.App. 4th Cir.5/8/02), 819 So.2d 1077, 1080. By definition, an affirmative defense raises a new matter or issue that will defeat the plaintiff's claim *72 on the merits, even assuming that claim is valid and that the allegations of the petition are true. See Webster v. Rushing, 316 So.2d 111, 114 (La.1975); Buck's Run Enterprises, Inc. v. Mapp Const., Inc., 99-3054, p. 4 (La.App. 1st Cir.2/16/01), 808 So.2d 428, 431.[5] Implicit in that definition is the conclusion that a defendant is not required to raise an issue as an affirmative defense if it does not raise a "new matter." Bienvenu, 01-2248 at p. 5, 819 So.2d at 1080. The purpose of pleading a special defense is to give fair and adequate notice of the nature of the defense so that the plaintiff is not surprised. Webster, 316 So.2d at 114.
The definition of "average compensation" in La. R.S. 11:701(5)(a) establishes the method of computation of a member's retirement benefits under the statutory scheme, and La. R.S. 11:888 directly addresses the mechanism of correction of "error as to the earnings or salary of a [TRSL] member" under the same scheme. The intrinsic nature of this scheme is not a "new matter" based upon factual circumstances raised by LSU or TRSL; it is simply part of the mandatory statutory framework or context which determines retirement benefits, and, by extension, Dr. Fishbein's cause of action. Thus, only issues of statutory interpretation are presented. Where a defense to a plaintiff's claim arises by operation of the very law under which the plaintiff is seeking recovery, the defense need not be affirmatively pleaded and there can be no unfair surprise, since no one may avail himself of ignorance of the law. See La. C.C. art. 5; Salter v. State ex rel. Dept. of Health and Human Resources, 612 So.2d 163, 166 (La. App. 1st Cir.1992). We conclude that the statutory provisions do not constitute "new matters" for affirmative defenses or for purposes of appeal. We must therefore address their applicability in this appeal.
We next address LSU's third assignment of error relating to the excluded testimony of Mr. Hall, the expert actuary, as its resolution will affect the disposition of the remaining assignments of error. In its brief, LSU claims that the trial court "refus[ed] to allow any testimony on the actuarial amounts due TRSL if the proper law was applied" and "abused [its] discretion in denying the expert . . . the opportunity to explain his proposed calculations." It contends that "[s]ince the trial court refused to allow any testimony on the amounts due under the proper analysis [,] there is nothing in the record for the [appellate] [c]ourt or the parties to base an award," thus necessitating a remand to the trial court for presentation of evidence of the "proper" calculations.
The trial court granted a motion in limine excluding evidence and testimony as to Mr. Hall's opinions relating to the accuracy or "equity" of the contribution figure owed by Dr. Fishbein and provided by TRSL, which was the same ($8,452.42) in both of the alternate actuarial reports. The trial court also sustained an objection to a question seeking Mr. Hall's opinion as to the "proper" ratio of employer and employee contributions and the amounts due under that ratio. However, the trial court expressly provided "a solution to get that in the record," an offer of proof or proffer of the testimony. See La. C.C.P. art. 1636. LSU proceeded to present Mr. Hall's testimony on the disputed point, but our review of the record reveals that although some general testimony as to an approximate 2:1 ratio was presented, no precise calculations *73 were made or otherwise presented during the proffered testimony. If a party fails to avail himself of the opportunity to make an offer of proof, he cannot complain on appeal of a ruling excluding a witness's testimony. Canty v. Terrebonne Parish Police Jury, 397 So.2d 1370, 1376 (La.App. 1st Cir.), writ denied, 401 So.2d 988 (La. 1981).
The decision of whether to admit or exclude expert testimony is one left to the great discretion of the trial court, and the decision reached by the trial court will not be disturbed on appeal absent an abuse of that discretion. See Moory v. Allstate Ins. Co., 04-0319, p. 3 (La.App. 1st Cir.2/11/05), 906 So.2d 474, 477. Likewise, the effect and weight to be given expert testimony is within the broad discretion of the trial judge. Burdette v. Drushell, 01-2494, p. 13 (La.App. 1st Cir.12/20/02), 837 So.2d 54, 65, writ denied, 03-0682 (La.5/16/03), 843 So.2d 1132. We find no abuse of discretion in the trial court's implicit determination that the excluded testimony would not assist it in its determination of the contested issues. See La. C.E. art. 702. Finally, even if it could be concluded that the trial court abused its discretion in excluding such testimony, we conclude that such error would be harmless, as no prejudice to LSU or TRSL resulted by reason of the exclusion of the testimony; the relevant issues to be determined were ultimately legal issues rather than factual issues related to actuarial calculations or opinions. See Pelts & Skins Export, Ltd. v. State ex rel. Dept. of Wildlife and Fisheries, 97-2300, p. 6 (La.App. 1st Cir.4/1/99), 735 So.2d 116, 122-23, writs denied, 99-2036, 99-2042 (La.10/29/99), 748 So.2d 1167, 1168. LSU's failure to make an offer of proof as to Mr. Hall's ultimate opinions and calculations on the disputed issue reinforces our holding. Thus, this assignment of error has no merit.
The parties stipulated at the hearing to Dr. Fishbein's actual total annual compensation (base salary and supplemental salary) for the calendar years 1995 through 1999: 1995$214,129.32; 1996 $213,218.90; 1997$216,386.84; 1998 $216,615.63; and 1999$174,364.22.[6] It is undisputed that if Dr. Fishbein's actual total compensation for the fiscal years 1995-96, 1996-97, and 1997-98 is considered, no successive year's salary exceeds that of the prior year by more than 10%.[7] Her total earnable compensation for the 1997-98 fiscal year (July 1, 1997 to June 30, 1998), for purposes of recovery of retirement contributions, was $208,502.18, which excludes supplemental salary from July 1, 1997 to August 7, 1997, a period for which her claim for retirement contributions attributable to that supplemental salary is prescribed. LSU and TRSL contend that the trial court erred in accepting the calculations of Mr. Hall's September 21, 2005 letter, which did not limit Dr. Fishbein's 1997-98 earnable compensation to 110% of her base salary for the 1996-97 fiscal year. Thus, LSU and TRSL contend that Dr. Fishbein's "allowable" compensation for 1997-98, after application of the 10% salary increase cap, would be $99,953.09, representing 110% of her base salary for 1996-97, rather than *74 $208,502.18.[8] We disagree.
As the supreme court unequivocally held, under the plain language of La. R.S. 11:701(10), Dr. Fishbein's supplemental salary "should have been included as part of her earnable compensation" during each of the years it was paid to her. Fishbein, 04-2482 at p. 17, 898 So.2d at 1271. The fact that it was not, and that her claims for correction of contributions prior to August 7, 1997 are prescribed, does not alter the fact that her supplemental earnings for the prior fiscal year, under "[t]he clear words of the statute," fall within the statutory definition of earnable compensation. Fishbein, 04-2482 at p. 19, 898 So.2d at 1272.
Under any fair and reasonable reading of the statute, it cannot be concluded that the 10% salary increase cap excludes consideration of the prior fiscal year's supplemental salary. Thus, for purposes of applying La. R.S. 11:701(5) only, we hold that the baseline "compensation" for that prior year is Dr. Fishbein's actual or total compensation, which included both her base salary and her supplemental salary. This interpretation does not run afoul of the supreme court's prior ruling as to prescription of the supplemental salary contribution claims, as the supplemental salary for the years subject to prescription is not actually included in calculating her average compensation. We simply hold that determination of the applicability of the 10% salary increase cap requires comparison of the total salary for the prior fiscal year to the total salary of the final fiscal year. By doing so, we apply meanings to the terms "compensation amount" and "actual compensation amount" in La. R.S. 11:701(5) that are logically consistent from year to year and comport with the true meaning of "earnable compensation" under La. R.S. 11:701(10).
Our holding expressed above accords with the jurisprudential rule of liberal construction of pension statutes in favor of retirees. See Swift v. State, 342 So.2d 191, 196 (La.1977); Harrison v. Trustees of La. State Employees' Ret. Sys., 95-0048, p. 7 (La.App. 1st Cir.10/6/95), 671 So.2d 385, 390. On the other hand, the interpretation advocated by LSU and TRSL would unfairly penalize Dr. Fishbein and would lead to an absurd result, whereby prescription would in effect extend forward in time to reduce benefits accrued in an unprescribed period.[9] Such a result would be contrary to the rule that prescriptive statutes are strictly construed against prescription. See Carter v. Haygood, 04-0646, pp. 10-11 (La.1/19/05), 892 So.2d 1261, 1268.
LSU urges that "[i]t is imperative that the statutes [La. R.S. 11:701(5) and La. R.S. 11:888] be read together to properly *75 apply the scheme developed by the Louisiana [l]egislature." We agree, but not for the reasons put forth by LSU. Louisiana Revised Statutes 11:888(C)(2) unequivocally states that "if [a contributions report] error is the total fault of the employer, the employer shall pay the total purchase [of service credit] cost." That language evinces a legislative intent that a member should not be unfairly penalized for the employer's "error as to the earnings or salary of a member." Applying the salary increase cap of La. R.S. 11:701(5) in the manner urged by LSU would plainly contravene such intent.
As to the trial court's failure to apply the 50% limit on employer share of the price of the purchase of service credit under La. R.S. 11:888, it is undisputed that the error in the contributions reports for Dr. Fishbein was solely LSU's fault. Dr. Fishbein has judicially confessed her liability for the amount of her share determined by TRSL, or $8,452.42. Thus, LSU clearly owes the balance due TRSL for the purchase of service credit, subject to the following final considerations.
Finally, we note that all parties have stipulated that the actuarial amounts due to TRSL must be updated and made current to the date of actual payment to TRSL, regardless of the result on the merits, and that the trial court's judgment failed to address this issue. Accordingly, we remand this matter to the trial court for a final evidentiary hearing at which evidence of the updated actuarial amounts due TRSL will be presented, in line with our holdings herein, and for entry of a supplemental judgment setting forth those amounts.

DECREE
The judgment of the trial court is affirmed insofar as it reflects the respective amounts due to the Teachers' Retirement System of Louisiana by the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College and Judith Fishbein, M.D. as of September 21, 2005, and the matter is remanded to the trial court for a final evidentiary hearing and entry of a supplemental judgment consistent with this opinion. All costs of this appeal, in the amount of $719.30, are assessed to the defendant-appellant, the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College.
AFFIRMED AND REMANDED FOR EVIDENTIARY HEARING AND ENTRY OF SUPPLEMENTAL JUDGMENT.
NOTES
[1] Fishbein, 04-2482 at pp. 16-20, 898 So.2d at 1271-72.
[2] Fishbein, 04-2482 at pp. 13-14, 898 So.2d at 1269.
[3] Fishbein, 04-2482 at pp. 20-21, 898 So.2d at 1273.
[4] Fishbein, 04-2482 at p. 21, 898 So.2d at 1273.
[5] An affirmative defense is generally defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." Black's Law Dictionary 451 (8th ed.2004).
[6] Dr. Fishbein actually retired in 1999, although she entered the DROP program on July 1, 1998. Her 1999 earnings are not relevant for purposes of our determination of the present dispute, as the date she entered the DROP program determines the "average compensation" upon which her retirement benefits are based under La. R.S. 11:701(5). See La. R.S. 11:787(A).
[7] "Fiscal year" is statutorily defined as the period beginning July 1 and ending June 30 of the following year. La. R.S. 11:701(14).
[8] Dr. Fishbein's base salary for the 1996-97 fiscal year was $90,866.44. Her base salary for the 1995-96 fiscal year was $83,085.34. It is undisputed that those figures must be used for the first two years of the three successive years used to calculate Dr. Fishbein's "average compensation," since her claims for recovery of retirement contributions for supplemental salary for those years are prescribed. The crux of the dispute at issue is the proper figure to be used for the third and final fiscal year.
[9] Our view is the converse of that taken by LSUthat the failure to apply the salary increase cap of La. R.S. 11:701(5) "implicitly credited her prior year's service with the amount of her supplemental pay," contrary to the supreme court's ruling on prescription. As we have previously explained, LSU's position is based upon acceptance of differing definitions of "earnable compensation" for Dr. Fishbein's final fiscal year and the prior fiscal year. We apply only one consistent definition, while at the same time recognizing the effect of prescription as to the claim for the prior fiscal year's retirement contributions attributable to supplemental salary.