BROWN, C.J.
Plaintiff, Calvin Walker, a psychiatrist, appeals from a judgment dismissing his claim for deceptive and unfair trade practices under the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") against defendant, Hixson Autoplex of Monroe, L.L.C. ("Hixson"). Dr. Walker purchased a 2015 Mustang GT Anniversary Edition from Hixson. Plaintiff alleges that at the time of the sale, defendant led plaintiff to believe that the Mustang he purchased was the more valuable collector's Limited Edition. Defendant filed a reconventional demand for attorney fees and costs, alleging that plaintiff was in bad faith in bringing his LUTPA claim. The trial court denied both Dr. Walker's claim and Hixson's reconventional demand. Plaintiff has appealed, and defendant filed an answer to the appeal reasserting its claim for attorney fees and costs. For the following reasons, we affirm the judgment of the trial court.
*1091 FACTS AND PROCEDURAL HISTORY
The original Mustang was first manufactured in 1964. To honor the car's 50th anniversary, Ford Motor Company ("Ford") manufactured two special editions of the Mustang in 2014, the "Limited Edition" and an "Anniversary Edition."
In recognition of the original Mustang's manufacture in 1964, only 1,964 Limited Edition Mustangs were manufactured in 2014 and were intended to be a collector's car. Each Mustang included a special trim package and had a plaque on the passenger's side dash with the particular number assigned to the vehicle out of the 1,964 produced. The Limited Edition came in either "Wimbledon White" or "Kona Blue" and had either an automatic or manual transmission. In anticipation of the release of the Limited Edition Mustang, Ford promoted the car, which included newspaper articles written about the Limited Edition. The Anniversary Edition Mustang also came with the same special trim package, but Ford manufactured the Anniversary Edition in much larger numbers.
Whether a dealership would get one of the 1,964 Limited Edition Mustangs was based on a lottery, with not every Ford dealership receiving a Limited Edition to sell. In April 2014, Dr. Walker visited Hixson to inquire about purchasing a Mustang. Dr. Walker spoke with Anthony Onebene, Jr., a Hixson sales representative. At that time, neither the Limited Edition nor the Anniversary Edition was available to purchase at any dealership, and Onebene took Dr. Walker's card and told him that he would contact him if Hixson received a car.
Dr. Walker testified that he first heard of the Limited Edition Mustang when promotional newspaper articles were published in the Monroe News Star . Dr. Walker was not aware of the Anniversary Edition. He testified, "[M]y intent was to buy the Limited Edition because I didn't know there was such a thing as a package (Anniversary) Mustang. I couldn't possibly have inquired truthfully about the package Mustang since I didn't know it existed ..."
Dr. Walker claims that he showed the articles about the Limited Edition Mustang to Onebene at the April 2014 meeting. Defendant's attorney showed Dr. Walker his deposition testimony, wherein, when asked whether he showed the articles to Onebene, Dr. Walker responded, "I'm not sure." Dr. Walker then explained that because he had mentioned showing the articles to Onebene in a letter he wrote to the attorney general, mailed approximately two months after the Hixson sale, that must have been true, because his memory of the events giving rise to the case was clearer at that time than at the time of his deposition testimony. Onebene testified that Dr. Walker did not show him the article about the Limited Edition and only said that he wanted a GT Mustang.
After speaking with Onebene at Hixson, Dr. Walker continued to contact other dealerships. In April 2014, Dr. Walker had a telephone conversation with Walter Downey, the sales manager at Rountree Ford ("Rountree"), in Shreveport. Downey communicated that Rountree had received notification from Ford that it would get one of the Limited Edition Mustangs. Dr. Walker asked Rountree to hold the Limited Edition Mustang ("Rountree Mustang") for him, and he paid a $10,000 nonrefundable advance deposit to the dealership and agreed to pay $15,000 above the Manufacturer's Suggested Retail Price ("MSRP") when the vehicle was available for purchase.
Several months later, on October 15, 2014, Onebene contacted Dr. Walker. Onebene testified that he told Dr. Walker, "I have a GT with the 50th anniversary package." Dr. Walker testified that Onebene *1092 said, "I have a car you might be interested in," which Dr. Walker understood to mean that Hixson had a Limited Edition Mustang.
On that day, because Dr. Walker was seeing patients, he sent his wife and daughter to Hixson to view the Mustang Onebene had said Dr. Walker would be interested in. The wife and daughter both testified that Dr. Walker's wife asked what number the car was. Onebene testified that he did not recall being asked that question by either of Dr. Walker's relatives. While at Hixson, the women learned that a tornado hit the daughter's house, and both mother and daughter quickly left.
Later that same day, Dr. Walker went to the dealership, inspected and rode in the vehicle, reviewed the window sticker ("Monroney sticker"), which included the MSRP (suggested price and certain official specifications of the car).[1] Dr. Walker negotiated the purchase price at $3,000 above MSRP, with the total price of the vehicle being $51,698.19. What Dr. Walker purchased was a blue 2015 Anniversary Edition Mustang GT ("Hixson Mustang").
Shortly thereafter, Dr. Walker contacted Downey to get back his deposit, stating that he had purchased a Limited Edition Mustang GT from Hixson. Downey told Dr. Walker that he could not have purchased a Limited Edition Mustang because none of the Limited Editions had been delivered to any dealerships. Downey checked the VIN and Dr. Walker then realized that he had purchased an Anniversary Edition Mustang from Hixson. In November 2014, Dr. Walker contacted Hixson to have the sale rescinded. However, Dr. Walker was told that because a title to the Mustang had been issued, the car would have to be sold as a used vehicle at a lower price than a new vehicle, meaning Dr. Walker would have had to suffer an "$11,000 loss" on the vehicle if he sold the car back to Hixson. Dr. Walker sent his wife to buy the Limited Edition Mustang from Rountree. Dr. Walker has kept the Anniversary Edition Mustang he bought from Hixson in storage, washing and driving it periodically.
Dr. Walker contacted the Louisiana Attorney General's Fraud Division about Hixson's conduct, but got no relief. Dr. Walker then filed the instant action claiming that "[d]efendant's conduct constitutes deceptive and unfair trade practice toward a consumer involving misrepresentations which were clearly unconscionable and deliberate conduct contrary to the provisions of [LUTPA]." Dr. Walker sought return of the purchase price of the Anniversary Edition Mustang and damages for mental anguish and reasonable attorney fees. Defendant answered on June 17, 2015, and pled the affirmative defenses of plaintiff's failure to mitigate his damages, estoppel, offset, superseding and/or intervening causes, and comparative fault and/or comparative negligence.
Defendant filed a motion for summary judgment and a reconventional demand seeking reasonable attorney fees and costs upon a finding by the court that plaintiff brought his claim for unfair trade practices in bad faith and for the purposes of harassment. The trial court denied the motion for summary judgment. The case proceeded to a bench trial, and the trial court provided oral reasons for its judgment denying plaintiff's claim and the reconventional demand. The instant appeal ensued, with both parties assigning errors.
DISCUSSION
Dr. Walker argues on appeal that the trial court erred in deciding the case without reading Rountree sales representative *1093 Walter Downey's deposition and in failing to find that there was no meeting of the minds as required for a valid contract of sale.
Hixson asserts that the trial court's ruling was correct, and this Court should not consider plaintiff's argument about there being no "meeting of the minds" because plaintiff did not raise this claim in any of his pleadings. Defendant answered the appeal, assigning as error the trial court's failure to award attorney fees for defending plaintiff's unfair trade practices claim, which was allegedly brought in bad faith and for the purposes of harassment.
Plaintiff argues that the trial court should have read and considered the deposition testimony ("Rountree deposition") of Downey. We agree. Downey was unable to testify, and plaintiff entered the Rountree deposition testimony into the record. Defense counsel objected on the grounds of relevancy. The trial judge stated he would read the Rountree deposition and determine what was relevant. In the court's oral reasons for judgment, however, the judge stated that he did not read the Rountree deposition because he did not believe it was relevant to plaintiff's claim. We have read this deposition and disagree with the trial court, finding that it was highly relevant to Dr. Walker's claim.
In April 2014, Dr. Walker visited Hixson and spoke with Onebene. Hixson did not have either the Limited or Anniversary Mustang. Within a month, Dr. Walker called other dealerships, specifically Rountree Ford in Shreveport. Dr. Walker spoke with Walter Downey at Rountree. In his testimony, Downey stated that Dr. Walker clearly wanted the Limited Edition. Several months later, in October 2014, Onebene called Dr. Walker and sold him an Anniversary Edition. When Dr. Walker contacted Downey to get his deposit back, Downey told plaintiff that the Limited Edition had not yet been built and what he got was actually an Anniversary Edition. This testimony shows that Dr. Walker was unequivocally intent on buying the Limited Edition Mustang.
The only question is whether Onebene knew or was aware of that motive.
La. C.C. art. 1949 provides:
Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and the cause was known or should have been known to the other party.
The comments under art. 1949 state:
When only one party is in error, that is, when the error is unilateral, there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is innocent of the error. Louisiana courts have often refused relief for unilateral error for this reason. See Hello World Broadcasting Corp. v. International Broadcasting Corp., 186 La. 589, 173 So. 115 (1937) ; Kirkland v. Edenborn , 140 La. 669, 73 So. 719 (1916) ; Scoggin v. Bagley , 368 So.2d 763 (La. App. 2 Cir. 1979). Yet, expanding the rule stated in C.C. Art. 1826 (1870), they have granted relief for unilateral error in cases where the other party knew or should have known that the matter affected by the error was the reason or principal cause why the party in error made the contract. See Marcello v. Bussiere , 284 So.2d 892 (La. 1973) ; Jefferson Truck Equipment Co. v. Guarisco Motor Co. , 250 So.2d 211 (La. App. 1 Cir. 1971). As expressed in Nugent v. Stanley , 336 So.2d 1058, 1063 (La. App. 3 Cir. 1976) : "The jurisprudence ... establishes that a contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, where the other party knew or should have known it was the principal cause."
*1094 ...
At civil law, a party's knowledge of the other's error at the time of making the contract constitutes fraud (dol ) see revised C.C. Art. 1953 (Rev.1984), infra ; C.C. Arts. 1832 and 1846(6) (1870). Under this revised Article, it is not necessary that the other party have known of the mistake; it suffices that he knew or should have known that the matter affected by the error was the reason that prompted the party in error to enter the contract.
Whether a defendant has violated LUTPA is a factual determination. Cupp Drug Store, Inc. v. Blue Cross & Blue Shield of La., Inc. , 49,482 (La. App. 2 Cir. 01/7/15), 161 So.3d 860, writ denied , 15-0571 (La. 5/22/15), 171 So.3d 249. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Id. Where there is more than one allowable view of the evidence, the fact finder's choice among them cannot be manifestly erroneous or clearly wrong. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole v. Department of Public Safety & Corrections , 01-2123 (La. 09/04/02), 825 So.2d 1134.
If the exclusion of evidence, here the Rountree deposition, taints a trial court's findings, this Court steps into the shoes of the fact finder and conducts a de novo review of all the admissible evidence to ensure a fair trial and a fair judgment.
Nonetheless, a de novo review should not be undertaken for every evidentiary exclusion error. Rather, a de novo review should be limited to consequential errors; that is, the error prejudiced or tainted the trial court's finding with regard to a material factual issue. Evans v. Lungrin , 97-0541 (La. 02/06/98), 708 So.2d 731, 735 ; Wingfield v. State Department of Transportation and Development , 01-2668 (La. App. 1 Cir. 11/08/02), 835 So.2d 785, 799, writs denied , 03-0313, 03-0339, 03-0349 (La. 05/30/03), 845 So.2d 1059, 845 So.2d 1060, cert denied , 540 U.S. 950, 124 S.Ct. 419, 157 L.Ed.2d 282 (2003).
In some cases where exclusion of evidence taints a trial court's findings, a preliminary de novo review can be limited to a determination of the impact of the excluded evidence on the overall findings. In our case, it is clear from the initial limited de novo review that the excluded evidence, the Rountree deposition, does not change the ultimate findings of the trier of fact.
LUTPA is set forth in La. R.S. 51:1401 et seq. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. La. R.S. 51:1405(A). A private right of action is provided in La. R.S. 51:1409(A) :
Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs[.]
Acts constituting unfair or deceptive trade practices are not specifically defined in LUTPA, but are determined by *1095 the courts on a case-by-case basis. Cheramie Services, Inc. v. Shell Deepwater Production, Inc. , 09-1633 (La. 04/23/10), 35 So.3d 1053. In general, acts which comprise unfair trade practices involve fraud, deception, misrepresentation, breach of fiduciary duty, or other unethical conduct. Id. To succeed on a LUTPA claim, the plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. Cupp, supra . The span of prohibited practices under LUTPA is extremely narrow. Cheramie, supra .
It is therefore up to the courts to determine what conduct falls within the ambit of practices prohibited by LUTPA. Prior cases involving consumer sales transactions are sparse and mostly involve wrongful possession and/or conversion of plaintiff's property. See Wilson v. T & T Auto Repair & Towing, L.L.C. , 50,095 (La. App. 2 Cir. 9/30/15), 180 So.3d 437 ; see also Johnson Construction Co. v. Shaffer , 46,999 (La. App. 2 Cir. 04/05/12), 87 So.3d 203 ; Tyler v. Rapid Cash, L.L.C. , 40,656 (La. App. 2 Cir. 05/17/06), 930 So.2d 1135.
This Court found a LUTPA violation warranting damages in Gandhi v. Sonal Furniture and Custom Draperies, L.L.C. , 49,959 (La. App. 2 Cir. 07/15/15), 192 So.3d 783, writ denied , 15-1547 (La. 10/23/15), 184 So.3d 19. In Gandhi , plaintiffs contracted with defendant to buy high quality custom furniture. Defendant's agent represented the company as being culturally and religiously like-minded with plaintiffs, which is why plaintiffs sought out the company. Plaintiffs visited defendant's showroom and show house, where they saw only high quality furniture. The defendant promised that the plaintiffs would receive the same quality furniture, and any pieces that were not approved would be removed or repaired.
Upon delivery, the plaintiffs noticed several problems with the furniture, which the defendant said he would remedy at a later date. Over the course of several weeks following delivery, however, the plaintiffs noticed that every piece of furniture was damaged. The plaintiffs initiated a stop payment on their final check to defendant. The defendant presented to the court a final invoice that defendant's agent said was given to the plaintiffs with handwritten notes stating the plaintiffs were 100% satisfied with the furniture after a seven-day inspection. The plaintiffs stated they received the invoice from the defendant, but there were no handwritten notes on it.
The plaintiffs sued the defendant for violating the Louisiana Racketeering Act and LUTPA and also asserted a redhibition claim. At trial, the plaintiffs' expert testified that the furniture delivered to the plaintiffs home was "shoddy," not actually intended for functional use, and was like movie set furniture. Gandhi , 192 So.3d at 787. The expert stated that the quality of the furniture had been misrepresented, and the furniture had been previously repaired prior to delivery.
The trial court, in its oral reasons for judgment, stated that the defendant had used "bait and switch" tactics, misrepresented the quality of the furniture, and preyed on the cultural and religious heritage of the plaintiffs. Id. The trial court also determined that the defendant's final invoice including the handwritten notes was fraudulently submitted to the court. The trial court stated that the "extortive conduct of [defendant's agent] was outrageous and abhorrent and the multiple violations of [LUTPA] were shocking." Id. at 787-88. This Court agreed with the trial court's decision and affirmed the judgment. Id. at 794.
A second case, *1096 McFadden v. Import One, Inc. , 10-952 (La. App. 3 Cir. 02/09/11), 56 So.3d 1212, involved the particularly egregious behavior of a car dealership which tried to coerce the plaintiff into buying a new car. The plaintiff traded in her car and was allowed to drive the new car while the dealership sought financing for her. The financing did not come through, so the dealership changed the financing terms, which the plaintiff did not agree to. The plaintiff wanted to return the new car, but the dealership refused and threatened that if she did not agree to the new financing terms, the dealership would report that the new car was stolen. The dealership also refused to return the plaintiff's trade-in car to her.
The dealership then falsely reported the new car as stolen, and the police went to the plaintiff's place of employment and repossessed the car in front of her coworkers and clients. The dealership still did not relinquish the vehicle to the plaintiff until months later. The Third Circuit called the dealership's actions "disgraceful conduct," and said that the dealership was "essentially holding [plaintiff's] vehicle hostage in an attempt to coerce a sale from her." Id. at 1221. The appellate court affirmed the trial court's judgment in favor of the plaintiff and found that the conduct warranted treble damages under LUTPA. Id. at 1221-23
In Jeter v. M & M Dodge, Inc. , 93-908 (La. App. 3 Cir. 03/02/94), 634 So.2d 1383, the vehicle involved in the case sustained damage to the hood while being transported from the manufacturer to the dealership. The car's hood was repaired and repainted, and the dealership was aware of the work done. After the car was sold to the plaintiff, the plaintiff discovered defects or overspray on the hood, roof, and bumper of the car. Two dealership employees told the plaintiff that the overspray was a result of a substance applied to the vehicle prior to transport or due to acid rain. The plaintiff discovered the true reason for the overspray from a collision center that did an inspection of the car, and it was only then that one of the dealership employees acknowledged the repair work done to the hood of the car prior to the sale. The appellate court affirmed, finding no error in the trial court's judgment that the dealership was in bad faith and committed an unfair trade practice.
The final applicable case, Gour v. Daray Motor Co., Inc. , 373 So.2d 571 (La. App. 3 Cir. 1979), involved the sale of an Oldsmobile car. The plaintiff believed that he was buying an Oldsmobile with an Oldsmobile engine; however, the vehicle contained a Chevrolet engine. The sales invoice listed the engine only by part number, and the engine itself had a decal which stated that it was an Oldsmobile engine. The dealership salesman testified that he told the plaintiff that the engine was a Chevy engine. The trial court determined that the fact that the car had a Chevy engine was not effectively communicated to the plaintiff. The appellate court called this a "reasonable evaluation of the credibility of the witnesses," and affirmed the trial court's judgment that LUTPA had been violated. Id. at 575.
These cases show clear deceptive or coercive behavior on the part of the defendants. A violation of LUTPA can only be found in the instant case if Hixson engaged in egregious fraudulent or deceptive conduct. At the very least, this would require that Hixson knew that Dr. Walker wanted only a Limited Edition Mustang, and the dealership tried to trick him into buying an Anniversary Edition instead. However, with regard to whether Hixson knew which edition plaintiff wanted, there is conflicting testimony.
The trial court found that Hixson's conduct did not involve fraud or unfair trade practices, but rather showed negligence on Dr. Walker's part in not specifying the *1097 vehicle he wanted. The trial court stated that this was an arms' length transaction between a willing buyer and a willing seller; Dr. Walker should have known that he was not getting a Limited Edition Mustang because the Hixson markup over MSRP was only $3,000, when the markup Rountree proposed was $15,000 over MSRP. Dr. Walker looked at the Hixson Mustang and its Monroney sticker and was presumed to know what he was buying.
This is a case in which there was unilateral error regarding a fact which was the principal cause for the contract. But, unilateral error invalidates the contract only when the other party knew or should have known of the error. In this case Dr. Walker did not know there were two editions and never told the salesman that he wanted anything other than a GT Mustang. He did not ask if the Hixson vehicle was the Limited Edition. On the other hand, he specifically spoke to a Rountree sales person about the Limited Edition. This was inexcusable neglect not sufficient to vitiate his consent. Degravelles v. Hampton , 94-0819 (La. App. 1 Cir. 03/03/95), 652 So.2d 647, writ denied , 95-0826 (La. 05/05/95), 654 So.2d 332.
Defendant argues that the trial court erred when it failed to conclude that plaintiff's unfair trade practices claim was brought in bad faith or for the purposes of harassment. Defendant asserts that when Dr. Walker contacted the Attorney General he alleged that there were audio tapes proving defendant's "fraud." Defendant asserts that at trial Dr. Walker admitted he never made or heard any audio recordings. Defendant urges that this puts Dr. Walker in bad faith in bringing his LUTPA claim against Hixson. Plaintiff responds that he never inaccurately represented to the trial court that he had audio recordings of defendant's alleged misrepresentations, and therefore, Dr. Walker's claim that he had tapes is not relevant to the instant appeal.
LUTPA provides that upon a finding by the court that an action under this section was groundless and brought in bad faith or for the purposes of harassment, the court may award to the defendant reasonable attorney fees and costs. La. R.S. 51:1409(A). This provision is penal in nature and is subject to reasonably strict construction. Double-Eight Oil & Gas, L.L.C. v. Caruthers Producing Co., Inc. , 41,451 (La. App. 2 Cir. 11/20/06), 942 So.2d 1279. The court has discretion in determining whether to award attorney's fees under the statute. Id. The trial court denied defendant's reconventional demand for attorney's fees under La. R.S. 51:1409, finding that the plaintiff did not act in bad faith or for the purposes of harassment. We see no reason, after reviewing the record, to disturb the trial court's decision.
CONCLUSION
The judgment of the trial court dismissing plaintiff's claim and denying defendant's reconventional demand is affirmed. Costs of this appeal are assessed equally between plaintiff and defendant.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, MOORE, GARRETT and STEPHENS, JJ.
Rehearing denied.

Dr. Walker could not drive a manual transmission so he was a passenger.