# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-100 consolidated with 18-101

**JAMES M. BIGLANE AND**

**CHARLOTTE BIGLANE NOBILE**

**VERSUS**

**BOARD OF COMMISSIONERS, FIFTH**

**LOUISIANA LEVEE DISTRICT, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 44712
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**BILLY HOWARD EZELL**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.

**APRIL 24, 2017 JUDGMENT REVERSED AND RENDERED; JUNE 19, 2017 JUDGMENT REVERSED.**

**Randall Alan Smith**
**Tiffany Hawkins Davis**
**Mary Nell Bennett**
**Smith & Fawer**
**201 St. Charles Ave., Suite 3702**
**New Orleans, LA 70170**
**(504) 525-2200**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **James M. Biglane**
    **Charlotte Biglane Nobile**

**Patrick Bayard McIntire**
**Oats & Marino**
**100 East Vermilion Street, Suite 400**
**Lafayette, LA 70501**
**(337) 233-1100**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Board of Commissioners for the Fifth Louisiana Levee District**

**Madaline Cross Gibbs**
**Seventh Judicial District Court Assistant District Attorney**
**P.O. Box 600**
**Harrisonburg, LA 71340**
**(318) 336-5526**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Board of Commissioners for the Fifth Louisiana Levee District**

**John D. Crigler, Jr.**
**Bishop Paxton Crigler & Moberley**
**P.O. Box 97**
**St. Joseph, LA 71366**
**(318) 766-4892**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Board of Commissioners for the Fifth Louisiana Levee District**

**EZELL, Judge.**

These consolidated appeals concern the taking of land by the Fifth Louisiana Levee District Board of Commissioners (FLD) for a project to raise and strengthen the levee in Concordia Parish lying between Louisiana Highway 131 and the Mississippi River. At issue is whether the property used for the project was un-compensable batture pursuant to La.Const. Art. 6, § 42, and whether the property had been previously appropriated. Additionally, there is the issue of whether the FLD should have raised these issues as affirmative defenses, resulting in the exclusion of much of its evidence. The award of attorney fees and costs are also at issue.

## FACTS

James Biglane and his sister, Charlotte Biglane Nobile, (collectively referred to as the Biglanes) co-owned approximately 3,000 acres of land in Concordia Parish next to the Mississippi River. The property is known as the Scotland and Genevieve Plantations. A levee existed on the property. Pursuant to La.R.S. 38:281(6), a levee district is "a political subdivision of this state organized for the purpose and charged with the duty of constructing and maintaining levees, and all other things incidental thereto within its territorial limits."

Pursuant to its authority under La.R.S. 38:281(6), the FLD sent a letter to the Biglanes on July 14, 2008, notifying them that on July 9, 2008, the FLD adopted a Resolution of Appropriation for Louisiana lands required for rights-of-way for a project known as Levee Enlargement and Berms, Item 361-R. The FLD attached information to the letter indicating that it needed approximately eighty acres of dirt from the Biglanes' property for the project.

Jason Trichelle, superintendent of operations for the FLD, testified that the FLD's primary responsibility is to maintain the Mississippi River levee and the Concordia backwater levee. He stated that the levee on the Biglane property was an intact levee but deficient in regard to the rest of the system. Mr. Trichelle explained that a record flood occurred in 2011 and, had the project at issue not been completed, it would have impacted all of Concordia Parish, including the Biglane property. Mr. Trichelle testified that the federal government pays for construction of the levee and the levee districts acquire the needed land, which is paid for by the State. He explained that the Corps of Engineers determines the least environmental impact and best potential borrow area and sends a right-of-way request to the levee district. The Louisiana Department of Transportation and Development (DOTD) prepares the ownership map and prepares the batture determination. The DOTD then determines whether the property should be appropriated or expropriated. Subsequently, the FLD determines the compensation based on appropriation or expropriation.

Lee Hines, vice president of Chustz Surveying, testified that his company performed a topographic survey of the property for the project. He presented the survey results to the Corps of Engineers indicating the elevation of the property.

Terry Lightsey, a licensed surveyor, was asked to determine the locations where dirt was previously removed from the property and draw a right-of-way map. To perform this task, he used old maps from the FLD and Corps of Engineers. Mr. Lightsey went to the property in May 2007 and measured distances based on the older maps to determine what right-of-way had previously been acquired versus what right-of-way was needed for the project. He explained that the area needed for the project was Parcel 3-3 on the river side of the levee, which contained 65.145 acres, and Parcel 3-2 on the land side of the levee, which contained 17.223 acres.

Paul Colquette, a civil engineer who worked with the DOTD, was asked to calculate the amount of batture in Parcel 3-3. He explained that the DOTD serves as the engineer for levee districts. He determined that there were 22.7 acres of batture outside the existing right-of-way in Parcel 3-3.

David Gullette, a real estate appraiser, appraised Parcels 3-2 and 3-3 of the Biglane property using the information from Mr. Lightsey and Mr. Colquette. He determined that Parcel 3-2, the land side, had a value of $5,500.00 an acre and Parcel 3-3, the river side, had a value of $3,300.00 an acre. He also took into consideration improvements on the land and the amount of batture which was needed. On February 27, 2009, the FLD sent a letter making an offer to the Biglanes for Parcels 3-2 and 3-3 for $335,287.00 for the property for the Mississippi River Levee Raising Project Item 361-R based on Mr. Gullette's appraisal.

Unsatisfied with the determinations of batture and prior takings, the Biglanes filed suit on July 2, 2009, seeking compensation and damages for the taking of their property. Named as defendants were the FLD and the DOTD. On September 25, 2013, the Biglanes filed a motion for partial summary judgment, requesting that the trial court declare that their property is neither subject to a pre-existing servitude, nor is it batture. The Biglanes filed another motion for partial summary judgment on December 18, 2015, asking that the trial court render judgment that the FLD owes compensation for the areas it claims are batture and subject to a pre-existing servitude. Summary judgment was denied on February 29, 2016.

On May 16, 2016, the FLD and the DOTD filed a motion for partial summary judgment asking that the court enter judgment that the property is riparian; that the ordinary high water mark is 62 feet at the property, with all property on the river side of the levee below that elevation being batture; and that the acreage on the river side

of the levee that is above 62 feet is just under fourteen acres. The trial court entered judgment denying the motion for summary judgment on July 15, 2016.

After a five-day trial in November 2016, the trial court rendered judgment dismissing the DOTD. Having deferred its ruling on existence of batture or of a pre-existing servitude until the end of trial, the trial court stated in reasons for judgment that it was not allowing any evidence as to these issues, ruling that they were affirmative defenses that had not been pled. The trial court further stated that, even if the evidence had been admissible, the FLD failed to meet its burden of proof regarding the issues of batture or a pre-existing servitude. Judgment was rendered on April 24, 2017, in favor of the Biglanes and against the FLD in the amount of $1,397,500.00, subject to a credit of $335,287.00, which was paid on June 25, 2013. At the request of the parties, attorney fees, expert fees, and costs were to be determined later. A judgment was rendered pursuant to La.R.S. 38:301(C)(2)(f) on June 15, 2017, awarding $265,553.25 in attorney fees based on a calculation of 25% of the net amount of judgment, which was $1,062,213.00 after the credit. An amended judgment was signed on June 19, 2017, to correct a clerical error. The FLD appealed the judgment of the trial court, and the Biglanes answered the appeal.

## EVIDENTARY RULINGS

The FLD first claims that the trial court erred in finding that batture is an affirmative defense that must be raised in the pleadings and excluding evidence on this issue. The FLD argues that batture is a criterion used to calculate just compensation for a riparian levee appropriation. Fourteen exhibits pertaining to batture were excluded from the evidence but were admitted as proffered evidence during the presentation of evidence and again, by the FLD, at the close of trial. Of

4

the fourteen exhibits, the FLD argues that seven of them were improperly excluded as to the issue of batture.

An affirmative defense must be specifically pled in the answer. La.Code Civ.P. art. 1005. "The determination of whether an issue is an affirmative defense is a question of fact resolved by examining the circumstances of the individual case." *Hyatt v. Mutual of Omaha Ins. Co.*, 14-282, p. 14 (La.App. 3 Cir. 10/1/14), 149 So.3d 406, 415. "[A]n affirmative defense raises a new matter or issue that will defeat the plaintiff's claim on the merits, even assuming that claim is valid and that the allegations of the petition are true." *Fishbein v. State ex rel. LSU Health Sciences Ctr.*, 06-549, p. 6 (La.App. 1 Cir. 3/9/07), 960 So.2d 67, 71-72, *writs denied*, 07-730, 07-708 (La. 6/22/07), 959 So.2d 495, 959 So.2d 505. "The new matter must be one, however, that is not raised in the plaintiff's petition." *Sher v. Lafayette Ins. Co.*, 07-2441, 07-2443, p. 23 (La. 4/8/08), 988 So.2d 186, 204. A defendant need not raise an issue that is not a new matter. *Fishbein*, 960 So.2d 67. "Where a defense to a plaintiff's claim arises by operation of the very law under which the plaintiff is seeking recovery, the defense need not be affirmatively pleaded and there can be no unfair surprise, since no one may avail himself of ignorance of the law." *Id*. at 72.

Louisiana Constitution Article 6, § 42(A)(emphasis added) provides for compensation for land used or destroyed for levee purposes as follows:

> Notwithstanding any contrary provision of this constitution, lands and improvements thereon hereafter actually used or destroyed for levees or levee drainage purposes shall be paid for as provided by law. With respect to lands and improvements actually used or destroyed in the construction, enlargement, improvement, or modification of federal or non-federal hurricane protection projects, including mitigation related thereto, such payment shall not exceed the amount of compensation authorized under Article I, Section 4(G) of this constitution. **However, nothing contained in this Paragraph with respect to compensation for lands and improvements shall apply to batture** or to property the control of which is vested in the state or any political subdivision for

5

the purpose of commerce. If the district has no other funds or resources from which the payment can be made, it shall levy on all taxable property within the district a tax sufficient to pay for property used or destroyed to be used solely in the district where collected.

Furthermore, La.R.S. 38:301(C)(1)(a)(emphasis added) also provides for compensation taken for levee purposes and provides: "[a]ll lands, **exclusive of batture**, and improvements hereafter actually taken, used, damaged, or destroyed for levee or levee drainage purposes shall be paid for at fair market value to the full extent of the loss."

The Biglanes are claiming compensation for property taken for levee enlargement purposes. Payment for batture is specifically excluded by statute. As explained in *Fishbein*, 960 So.2d at 72, "it is simply part of the mandatory statutory framework" that determines compensation for land taken or destroyed for levee purposes. The trial court erred in finding that the FLD had to plead the issue of batture as an affirmative defense and in excluding evidence on that issue.

In its written reasons, the trial court stated that it was excluding evidence based on the Biglanes' objections for failure to plead affirmative defenses prior to trial. On appeal, the Biglanes complain that the trial court could have excluded the evidence of batture on other grounds they asserted at trial, including hearsay, authenticity, cumulative effect, demonstrative only, relevance, and lack of foundation. However, the Biglanes do not brief this argument. According to the Uniform Rules-Louisiana Courts of Appeal, Rules 2-12.4 and 2-12.5, issues not briefed on appeal are deemed abandoned.

Regardless, we do find that the seven exhibits would have been properly admissible. Exhibits D-18, D-19, and D-20 were prepared by Mr. Colquette and offered during his testimony. He explained that the DOTD serves as the engineer

for levee districts. The documents were maps prepared by Mr. Colquette and the information he used in calculating what constituted batture. Mr. Colquette testified at trial regarding the information and process he used in preparing the documents.

Exhibit D-24 was prepared by Michael Mayeaux, an expert land surveyor who testified at trial. It is a topographic survey based on Mr. Lightsey's calculations. Mr. Mayeaux's survey indicates his calculation of the area of non-compensable batture.

Exhibits D-25 and D-26 were prepared by the Biglanes' expert, Dr. Frank Willis, as part of his report but admitted during the testimony of Mr. Mayeaux. The exhibits were LIDAR images using two different high-water elevations. Exhibit D-34 is a photograph taken by Dr. Willis of the property, who testified that he went to the property and took the picture from a canoe. At trial, Dr. Willis explained that the picture was taken in 2015, after the levee work was performed. These witnesses authenticated the documents and were subject to cross-examination.

## STANDARD OF REVIEW

Having determined that the trial court should have considered the above excluded evidence, we will now determine if the evidence affects the judgment. If the exclusion of evidence taints a trial court's review, the reviewing court should conduct a de novo review of the admissible evidence to ensure a fair trial and a fair judgment. *Walker v. Hixson Autoplex of Monroe, L.L.C.*, 51,758 (La.App. 2 Cir. 11/29/17), 245 So.3d 1088. Not every evidentiary exclusion requires a de novo review. *Id.* A de novo review should be limited to those circumstances where "the error prejudiced or tainted the trial court's finding with regard to a material factual issue." *Id.* at 1094.

In the present case, the trial court stated in written reasons for judgment that even if it considered the excluded evidence, it would find that the FLD failed to meet

its burden of proof regarding batture. The trial court had the benefit of viewing the proffered evidence and hearing the testimony in this case. Therefore, we find it appropriate to apply the manifest error standard of review to the trial court's findings as the trial court allowed FLD to put forth evidence regarding batture, deferring ruling on its admissibility until after the trial.

## BATTURE

Louisiana Civil Code Article 665 provides for a legal public servitude for the making or repairing of levees on the shores of navigable rivers. Louisiana Constitution Article 6, Section 42, "exempts the state and political subdivisions from compensating riparian landowners for the exercise of its levee servitude when the lands actually used or destroyed for levee or levee purposes are 'batture.'" *DeSambourg v. Bd. of Com'rs for the Grand Prairie Levee Dist.*, 621 So.2d 602, 603, n.2 (La.1993), *cert. denied*, 510 U.S. 1093, 114 S.Ct. 925 (1994). The supreme court defined batture for the purposes of exemption from compensation as "alluvial accretions annually covered by 'ordinary high water,' the highest stage the river can be expected to reach annually in seasons of high water." *Id*. at 604. The court went on to hold that "[o]rdinary high water" "is the highest water stage the river can be *expected* to reach annually, but not the level the water reaches during major flood events[.]" *Id*. at 611. The supreme court determined that evidence of the mean high water, the average of annual river stage peaks at a given location, was compatible with the definition of batture.

The FLD presented the testimony of three witnesses to establish how much of the acreage was batture. Mr. Mayeaux testified that riparian property fronts on water, in this case the Mississippi River. He testified that the property was riparian at the time of separation from the sovereign. Charles Wilkes, an expert real estate

appraiser hired by the Biglanes, determined that the property fronted the Mississippi River. Dr. Willis agreed that the property was riparian.

Mike Sorrels, chief of the hydraulics branch of the Vicksburg District Corps of Engineers, testified that there is a river gauge on the Mississippi River in Natchez, Mississippi, which is located on the Natchez bridge at about river mile 363.3. He testified that gauge zero for the Natchez gauge is 17.28 feet. Mr. Sorrels explained that gauge zero is a conversion to get from the stage reading to the actual elevation. Mr. Sorrels testified that the Corps of Engineers keeps records of the stage readings at the Natchez gauge in the course of its regular business.

In calculating batture, Mr. Colquette testified it was his understanding that batture was the area on the river side of the levee that would flood two out of three years. He stated that he got a listing of the high-water points at the Natchez gauge from the Corps of Engineers for every year from 1960 to present. He also had the right-of-way maps prepared by Mr. Lightsey, in addition to a digital terrain model of the borrow pit area from the Corps of Engineers. On July 16, 2008, Mr. Colquette calculated that the property would flood up to an elevation of 59 feet, 70.8% of the time. Mr. Colquette explained that the water would reach 59 feet for seven out of ten years. Mr. Colquette chose a number that was more favorable to the property owners because he did not want any error in the data provided by the Corps of Engineers to impact the property owners.

Mr. Colquette calculated 22.7 acres of batture in Parcel 3-3, which had a total of 65.145 acres. He testified that he did not calculate batture in what he had been told was the existing right-of-way. Mr. Colquette also admitted he did not physically visit the property.

9

Using the Natchez gauge reading provided by the Corps of Engineers, Mr. Mayeaux calculated the ordinary high-water mark to be 62.08 feet, using the standard set forth in *DeSambourg*, 621 So.2d 602. He disregarded any water levels above the flood stage of 65.27 feet. Mr. Mayeaux testified that he looked at year 1911 and years 1940 forward. Mr. Mayeaux testified that he used the Chustz topographical survey provided to the Corps of Engineers for the project to calculate the batture acreage.

Mr. Mayeaux used the data points that were collected in the field to regenerate the contours. The contour data reflected that water would go behind an alluvial ridge located on the property. Mr. Mayeaux stated that the LIDAR images from Dr. Willis with water levels set at 59 feet and 62 feet indicated that water would get behind the alluvial ridge toward the levee. Mr. Mayeaux testified that 13.992 acres were above 62 feet in Parcel 3-3.

Dr. Richard Kesel, an expert in the fields of physical geology, sedimentology, and geomorphology, testified at trial. He also testified in the *DeSambourg* case. He explained that you average the mean high-water mark from every year over at least thirty or forty years, resulting in the high-water mark for the extended period of time. Dr. Kesel also used the information provided by the Corps of Engineers. He calculated the mean high-water mark at 62.5 feet. He testified that the borrow pit used for the project area is totally batture. Dr. Kesel did not use the reading from 1973 because the largest number is thrown out when calculating a mean. He explained that the Natchez gauge is located right next to this property, so no interpolation is needed. Dr. Kesel further explained that the approach used by Mr. Colquette was not consistent with the approach adopted by the supreme court in *DeSambourg.* Using the same numbers Mr. Colquette used, but utilizing the

approach in *DeSambourg*, Dr. Kesel determined that the batture elevation would be 62.5 feet. He explained that Mr. Colquette's approach was more favorable for the landowner because the landowner would get paid for three additional feet. Using the topographical maps, Dr. Kesel explained 62 feet of batture would cover the ground up to the toe of the levee, which includes the area of the borrow pits. Dr. Kesel also stated that it makes no difference how long the water stayed at peak elevations because, on a big river like the Mississippi River, the water does not just instantaneously rise and then just drop down.

The Biglanes offered the testimony of Frank Willis, an expert in civil and environmental engineering, land surveying, geoscience, and hydrology. Mr. Willis testified that he did not perform a batture determination. He criticized the FLD's three experts because they did not go to the property before analyzing the data. Mr. Willis had no reason to doubt the reliability of the numbers from the Corps of Engineers. He testified about going to the property in a canoe and taking pictures of the property. The river was at 61.8 feet, and water was going through a break in the alluvial ridge, which was sticking up. He also stated that water would get around the alluvial ridge by flowing upstream. Although this was after the levee project was completed, he admitted that if the water levels rise to 62 feet, there is no impediment to the water getting all the way to the toe of the levee.

Based on the evidence in the record, we find that the trial court erred in concluding that the FLD failed to establish that there was non-compensable batture on the Biglane property that was used for levee purposes. Under the guidelines of *DeSambourg*, the FLD established that the ordinary high-water mark is 62 feet based upon the testimonies of Mr. Mayeaux and Dr. Kesel. Based on Mr. Mayeaux's

11

testimony, only 13.992 acres on the alluvial ridge were not batture in Parcel 3-3. The rest of the acreage in Parcel 3-3 was non-compensable batture.

In making its award to the Biglanes, the trial court relied on their expert, Charles Wilkes. He testified that he was asked to make two extraordinary assumptions when appraising the property: (1) There was no existing right-of-way on the east levee toe on the river side, and (2) There was no non-compensable batture. Mr. Wilkes calculated that the FLD owed the Biglanes $1,215,880.00 for 226 acres in Parcel 3-3, $162,757.00 for 17.223 acres in Parcel 3-2, and $18,752.00 for fences and gates, totaling $1,397,389.00. Mr. Wilkes rounded this number to $1,397,500.00, which is what the trial court awarded.

Finding that only 13.992 acres were compensable in Parcel 3-3, we find that the amount owed to the Biglanes for Parcel 3-3 based on Mr. Wilkes' appraisal would be $75,276.96. (($1,215,880.00 ÷ 226 acres = $5,380 per acre) ($5,380 x 13.992 acres = $75,276.96)). The new total would be $256,785.96. The FLD already tendered $385,287.00. The trial court erred in awarding the Biglanes any additional compensation.

## ATTORNEY FEES AND COSTS

Finding no additional compensation is due the Biglanes, we also find that they are not entitled attorney fees and costs pursuant to La.R.S. 38:301(C)(2)(f), which provides for the award of attorney fees when additional compensation is awarded. Therefore, we reverse the award of attorney fees.

In light of this court's reversal of the award of additional compensation to the Biglanes, the assessment of costs against the FLD is also reversed.

## CONCLUSION

For the reasons discussed in this opinion, the judgment of April 24, 2017, awarding additional compensation to the Biglanes is reversed. Judgment is entered dismissing the Biglanes' claims against the Fifth Louisiana Levee District Board of Commissioners with prejudice. The judgment awarding attorney fees and costs to the Biglanes on June 19, 2017, is also reversed. Costs of this appeal are assessed to James Biglane and Charlotte Biglane Nobile.

**APRIL 24, 2017 JUDGMENT REVERSED AND RENDERED; JUNE 19, 2017 JUDGMENT REVERSED.**