Judgment rendered December 17, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,669-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KIMBERLY PEARSON RUBY                     Plaintiff-Appellant

versus

LYNDON BAIN CARPENTER                     Defendant-Appellee

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 49,943

Honorable Bruce E. Hampton, Judge

* * * * *

LAW OFFICES OF STREET & STREET          Counsel for Appellant
By: C. Daniel Street

DOLLAR LAW FIRM, LLC                     Counsel for Appellee
By: Johnny E. Dollar

* * * * *

Before PITMAN, STONE, and ELLENDER, JJ.

**PITMAN, C. J.**

Plaintiff Kimberly Pearson Ruby appeals the judgment of the trial court dismissing her claim for damages brought under La. R.S. 22:1871, *et seq.*, the Health Care Consumer Billing and Disclosure Protection Act, a/k/a Balanced Billing Act ("BBA"), and the Louisiana Unfair Trade Practices Act ("LUTPA") against her chiropractor, Defendant Lyndon Bain Carpenter. For the following reasons, the judgment of the trial court is affirmed.

## FACTS

Plaintiff was involved in an automobile accident and suffered injuries on March 9, 2019. She sought treatment for her spine injuries from Defendant at his chiropractic clinic in Farmerville. Her treatment started on May 19, 2019, and concluded on March 30, 2020. Her treatment from May 19, 2019, through August 5, 2019, was paid for by her health insurer, United Healthcare, through her employment with Century Link. Defendant was contracted with United Healthcare; thus, that treatment was considered "in network" and was provided to Plaintiff at the discounted contractual price.

In August 2019, Plaintiff changed jobs and her coverage with United Healthcare terminated. Because her chiropractic care continued, Plaintiff informed Defendant that her bills were to be sent to State Farm, which was the tortfeasor's insurer for the automobile accident. She informed him that State Farm had accepted responsibility and had authorized direct billing for her medical treatment. Defendant verified this fact; and at her specific order to do so, he began billing State Farm for her care and filed a medical lien against her future settlement.

Plaintiff obtained Blue Cross Blue Shield ("BCBS") coverage through her new employment, which went into effect on October 1, 2019. Although she claims she informed Defendant's office of this new coverage, he did not have any record that BCBS was now to be billed for her treatment, and he continued to bill State Farm. Upon her retention of an attorney and Defendant's receipt of his letter of representation dated January 14, 2020, Defendant began billing her attorney.

The bill for the period of August 12, 2019, through January 10, 2020, totaled $5,365. Treatment between January and March 30, 2020, totaled an additional $2,220. Defendant provided Plaintiff's attorney with a final invoice in the amount of $7,585.00 on July 9, 2020. The personal injury case settled on August 19, 2020, with checks being issued on August 28, 2020. Plaintiff's attorney paid Defendant $5,365, which was based on an earlier billing amount prior to completion of treatment. On September 1, 2020, Defendant notified the attorney that the check was $2,220 less than he was owed, but the attorney told him that Plaintiff owed the difference because she should have stopped treatment earlier. Eventually, Plaintiff paid Defendant $2,220 under protest. This amount was partially funded by a loan from her attorney.

On September 3, 2020, Defendant received a copy of Plaintiff's BCBS enrollment card effective October 1, 2019, with a notation for coverage of her care after she "came off personal injury." Defendant was never informed of any BCBS coverage until September 3, 2020.

Plaintiff claims that the attorney was "forced to investigate the matter" and discovered "about the payments made by United Healthcare and found out about the BCBS coverage which revealed a violation of the

2

Balanced Billing Act." Plaintiff filed suit seeking redress for the alleged violations of the BBA. She claimed that had Defendant billed BCBS as he should have, she would not have had to pay anything for treatment from October 1, 2019, when the BCBS coverage went into effect, because that coverage had no deductible and no copay required. She sought recovery of damages, treble damages and attorney fees for violations of the BBA and the LUTPA.

The matter was set for trial and was heard on October 21, 2024, and taken under advisement. On February 7, 2025, the trial court filed its reasons for judgment and concluded that Plaintiff had not carried her burden of showing any violations of double billing or Defendant's failure to participate in discount billing for medical treatment. Plaintiff had instructed Defendant to bill State Farm as the tortfeasor's insurer, and he did so. The trial court found that despite Plaintiff's claim that she had provided a copy of her insurance card from BCBS to Defendant, he proved he did not know about the BCBS coverage until September 3, 2020, and, thus, could not be responsible to Plaintiff for the amount she was billed. The trial court found that Defendant did not commit fraud or violate any unfair trade practices, and there was no violation of either the BBA or the LUTPA. Judgment was signed on April 11, 2025, with the trial court ruling in favor of Defendant and against Plaintiff and dismissing her suit with prejudice.

This appeal followed.

## DISCUSSION

Plaintiff argues that the trial court erred in failing to find Defendant violated the BBA and dismissing the suit with prejudice. She also argues that the BBA does not allow a qualified health care provider to charge a

patient an amount greater than the contractually agreed-upon amount. She contends that by charging State Farm 100 percent of the costs of the service, Defendant violated the BBA and the LUTPA. For that reason, Plaintiff claims the trial court erred in not awarding damages and attorney fees for Defendant's alleged violations and in not awarding treble damages provided for in the BBA and the LUTPA.

Defendant argues that the trial court correctly found that there were no violations of the BBA or the LUTPA. He contends that the BBA only applies to contracted providers billing health insurers, and when he became aware of United Healthcare's coverage, he billed them at the contracted rate. Further, when Plaintiff informed him of the State Farm coverage under the tortfeasor's insurance liability policy, he began charging that insurance company, and it agreed to cover her medical bills. He asserts that the BBA does not apply because State Farm is not a "health insurance issuer" under the Act.

Defendant also argues that the BBA does not apply to the amount which could have been billed to BCBS because the trial court found that Defendant did not learn of that coverage until September 3, 2020, months after treatment ended and bills had been submitted to State Farm and settled.

Defendant further argues that the trial court also correctly found there was no violation of the LUTPA. He notes that he charged State Farm at the appropriate rate and that his bill was paid by it from the settlement of Plaintiff's tort suit. He submitted his bill for the total amount owed of $7,585, and Defendant's attorney only paid a portion of that amount. He

4

points out that he never double billed Plaintiff or sought compensation to which he was not entitled.

The BBA, La. R.S. 22:1871, et seq., prohibits a contracted healthcare provider from collecting or attempting to collect amounts from an insured patient in excess of the contracted reimbursement rate. *DePhillips v. Hosp. Serv. Dist. No. 1 of Tangipahoa Par.*, 19-01496 (La. 7/9/20), 340 So. 3d 817. La. R.S. 22:1874, titled "Billing by contracted health care providers," states in pertinent part as follows:

> A. (1) A contracted health care provider shall be prohibited from discount billing, dual billing, attempting to collect from, or collecting from an enrollee or insured a health insurance issuer liability or any amount in excess of the contracted reimbursement rate for covered health care services.
> (2) No contracted health care provider shall bill, attempt to collect from, or collect from an enrollee or insured any amounts other than those representing coinsurance, copayments, deductibles, noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer on an explanation of benefits as an amount for which the enrollee or insured is liable.
> (3) However, in the event that any billing, attempt to collect from, or the collection from an enrollee or insured of any amount other than those representing copayment, deductible, coinsurance, payment for noncovered or noncontracted health care services, or other amounts identified by the health insurance issuer as the liability of the enrollee or insured is based on information received from a health insurance issuer, the contracted health care provider shall not be in violation of this Subpart.

La. R.S. 22:1872 contains the definitions relevant to the BBA as follows:

> (9) "Discount billing" means any written or electronic communication issued by a contracted health care provider that appears to attempt to collect from an enrollee or insured an amount in excess of the contracted reimbursement rate for covered services.
>
> (10) "Dual billing" means any written or electronic communication issued by a contracted health care provider that

5

sets forth any amount owed by an enrollee or insured that is a health insurance issuer liability.

***

(18) "Health insurance coverage" means benefits consisting of medical care provided or arranged for directly, through insurance or reimbursement, or otherwise, and includes health care services paid for under any plan, policy, or certificate of insurance.

(19) "Health insurance issuer" means any entity that offers health insurance coverage through a policy or certificate of insurance subject to state law that regulates the business of insurance.

A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. *Stobart v. State through Dep't of Transp. & Dev.,* 617 So. 2d 880 (La. 1993).

La. R.S. 51:1405, LUTPA, is titled "Unfair acts or practices; interpretation and rulemaking authority," and it states as follows:

A. Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

B. The attorney general may make rules and regulations interpreting the provisions of this Chapter consistent with the provisions in R.S. 51:1 through 461.1. Such rules and regulations shall be adopted in the form and manner prescribed by the Administrative Procedure Act, R.S. 49:950 et seq. The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the division is located or in the parish in which the plaintiff resides or is domiciled. Appeals may be had from any ruling of a district court in accordance with the Code of Civil Procedure, except that such appeals shall be given preference and heard in priority to other appeals.

6

Acts constituting unfair or deceptive trade practices are not specifically defined in the LUTPA but are determined by the courts on a case-by-case basis. *Cupp Drug Store, Inc. v. Blue Cross & Blue Shield of Louisiana, Inc.*, 49,482 (La. App. 2 Cir. 1/7/15), 161 So. 3d 860, *writ denied*, 15-0571 (La. 5/22/15), 171 So. 3d 249. In general, acts which comprise unfair trade practices involve fraud, deception, misrepresentation, breach of fiduciary duty or other unethical conduct. *Id.* The span of prohibited practices under the LUTPA is extremely narrow. *Id.* To succeed on a LUTPA claim, the plaintiff must show that the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous or substantially injurious. *Id.*

Whether a defendant has violated the LUTPA is a factual determination. *Walker v. Hixson Autoplex of Monroe, L.L.C.,* 51,758 (La. App. 2 Cir. 11/29/17), 245 So. 3d 1088, *citing Cupp*, *supra*. An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. *Id.* Where there is more than one allowable view of the evidence, the fact finder's choice among them cannot be manifestly erroneous or clearly wrong. *Id.* Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.*, *citing Cole v. Department of Public Safety & Corrections*, 01-2123 (La. 9/4/02), 825 So. 2d 1134.

The evidence shows Defendant never attempted to double bill any insurance provider. Plaintiff's attorney was aware that Defendant was billing State Farm and that the total amount was $7,585. When the case was settled,

7

Defendant immediately notified the attorney that the initial payment of $5,365 was insufficient for the chiropractic services rendered and that $2,220 more should have been paid out of the settlement.  We find no manifest error in the ruling of the trial court.  The assignments of error are without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court dismissing Plaintiff Kimberly Pearson Ruby's suit against Defendant Lyndon Bain Carpenter is affirmed.  Costs of this appeal are assessed to Plaintiff.

**AFFIRMED.**